Mr. Lockton. Thank you, Judge Newman, and may it please the Court. This is Andrew Lockton appearing on behalf of the Plaintiff Appellant, GateArm Technologies. With my time this morning, or I guess it's this afternoon now, I'd like to address three primary issues. I'd like to start with the District Judge's review of the report and recommendation issued by the Magistrate Judge. And then, as my friend has been arguing in briefing that we should simply assume review was appropriate, I would like to take some time to address the correct application of this Court's precedent for contempt of a patent injunction. And particularly in light of if the Court does agree and vacates and remands the order to the District Judge, I believe that clarification of the law will be important, as it's been a point of considerable contention between the parties, both in the lower courts and in the briefing here today. And finally, if there's time permitting, I would like to address that even on the facts as found and admitted in the record before you, the 200 patent has been very clearly infringed, and that the appellee's modified product violates the Court's injunction with at least with respect to that patent. This is Judge Duranto. Can I actually divert you from the sequence that you proposed and start at the back end? Where in the joint appendix do I find your fullest presentation of your argument that the modified product infringes the 200? The fullest presentation of the modified product, well, in the, let me direct the Court to, in our pre-hearing brief, we addressed that the plaintiff's demonstrative I'm sorry, where do I find that in the joint appendix? My apologies, Your Honor. That in the joint appendix, you can start with Appendix 1398 to 1399. Where we presented to the Court that applying the prior infringement contentions for both the 125 and 200 patents to both the enjoined product and the new product, the new product maintain the same features. So that doesn't actually do what is necessary for a basic infringement analysis, which is to recite the elements of the claim and show how they map onto the device, onto the accused There's a thought that is worrying me about your 200 case, and I'm not sure you ever made it. So if you look at the 200 patent, it says that the opening in the arm is formed by the channel, and in particular by the upper and lower channel sidewalls. That means, it seems to me, that the upper and lower channel sidewalls have to come out and meet the arm at the corner. Otherwise it wouldn't be an opening in the arm. That's what it means for the opening to be formed. At that point, though, what everybody is calling the fins, when they've been moved into the sidewall, and therefore don't infringe. And I don't see where you did that infringement analysis, which is one half of the TEVO contempt analysis, not the colorably different half, but the infringement half, which undeniably had to be established by clearing convincing evidence under TEVO.  I believe that Dr. Tipton's concession during the trial, the evidentiary hearing testimony, the magistrate's judge finding that the fins were included on the upper and lower inset channel sidewalls, and the admissions of the principals of the appellees, Mr. Brinkman and Pickman, that the fins were on the upper and lower channel sidewalls, was our best argument. Here's why it seems to me that at least some of that doesn't do the trick. The fins are undeniably on the upper and lower sidewalls of the channel. But that doesn't say, and the magistrate didn't say, that they are at the terminating ends of the upper and lower channel sidewalls. And indeed, since the channel sidewalls, it seems to me, clearly have to come out to meet the arm. They are plainly not the terminating ends. And Dr. Tipton actually did say that at the end of his expert report. I think it's 1054, 1055. And then I think gave that answer expressly in cross-examination at 2378 of the appendix. Well, Your Honor, I believe Dr. Tipton's entire opinion, first of all, should never have been in presenting an expert opinion. However, he did concede that with regard to what we presented as our infringement contentions for both the enjoined product and for the modified product, that that contention, which was reflected with the blue line, was the same for both. Counsel, this is Judge Chen. I'm curious to understand better what your side did to articulate, you know, under this clear and convincing evidence standard in this contempt proceeding, why these fins, which are no longer along the outer surface, but now are inset somewhere along the way, why they necessarily are at the terminating end of the channel sidewalls? I believe that question might incorporate a couple mistakes, Your Honor, if I might. First of all, outer surface was never part of the claim terms that are included in the 125 or the 200 patents. They're not part of the court's claim construction. But they have been introduced and argued by my friends on the other side. Okay. Then what is your conception, then, of why we can identify this particular location along the channel sidewall as the terminating end of the channel sidewall? And I would like to address that as my second point, Your Honor. The terminating ends were the term used in the specification and in the claims to represent what became referred to as the fin or the lip. It was not, it wasn't presented and it hasn't been argued, and it wasn't part of the court's claim construction, it wasn't addressed by the district judge, that those had to be at the terminating end of one of the sidewalls. Those were the, the terminating end was the articulation of what was later referred to as a fin. So in the 125 patent, it was claimed that the terminating ends were included on the upper and lower sidewalls, which was then construed by the court as the upper half of the side surface and the lower half of the side surface. With the 200 patent, however, the terminating ends were claimed as being on the upper and lower inset channel sidewalls. And that was presented in our contentions and that was presented in our case. Right, but I'm just looking for, I mean, I see that you've got red lines, blue lines in your pictures, but I'm trying to understand where you made the case that this necessarily is located, why this can be regarded as a terminating end when you would think that a terminating end logically would be at the very, very end of the channel sidewall. And so, therefore, why is this, why is this fin located at the terminating end of the channel sidewall? Or if you agree it isn't, why doesn't it have to be at the terminating end of the channel sidewall to be regarded as a terminating end of a channel sidewall? Well, I guess I would try to explain it as the upper terminating end and the lower terminating end were articulated within the patent as a structure in and of themselves. They were not, they weren't claimed as the terminating end of a specific sidewall. They were claimed, which is why they ended up being referred to as fins, as their own distinct piece. That piece later became referred to as the fin. So we weren't arguing and presenting that they had to be at the terminating end of the channel sidewalls or at the terminating end of the upper and lower sidewalls. They are, as claimed, included here. So are you saying that they are a structure separate from the channel sidewalls? I mean, the claim says inset channel sidewalls including a first upper terminating end and a first lower terminating end. So to me, that suggests that whatever a terminating end is, it's part of the channel walls. It's not a separate entity apart from the channel walls. It's included as part of the channel walls. And I would agree that in both the enjoined product and in the new product, that what we're calling terminating ends or fin is included and it is part of that structure. It forms straight from it. And in just the way that... Straight from it, but why, but I guess my question is, continues to be, why are these fins in the accused product at the terminating end of the inset channel walls? And where did you explain why this represents the terminating end and not some other location? For example, like where the channel walls go all the way out to the surface of the arm? I believe that we presented that through Dr. Rice's testimony using the demonstrative showing how the infringement contentions are drawn showing that... Your Honor, may I finish my response? Yes, of course. Thank you. I, in the same way that if the inset channel sidewalls on the upper and lower have terminating ends that form an angle and curve into what we're calling the fins, that change, which Dr. Tipton admits has not been changed between the two products, is the same kind of continuous structure that is shown in our demonstrative exhibit where the upper and lower sidewalls of the modified product now have that curve in order to connect to that terminating end of the inset channel sidewalls. I guess a more complete answer would be that we are right now, today for the first time, attempting to construe something that was never presented below but where the terminating end of the inset channel wall is. And that would be a matter that it's... I mean, it can be construed in different ways. I would argue that following those blue lines in the demonstrative, it shows exactly how the fin is on that terminating end under Your Honor's hypothetical. And it also shows how the upper and lower sidewalls on the outer surface of the gatearm include a similar right-hand bend or left-hand bend, depending on which surface you're on, upper or lower, in order to meet that terminating end of the inset channel sidewall where the terminating end is coming off of. I also think this is a matter that the district judge should have reviewed. Any more questions at the moment for Mr. Lockton? No. Okay, all right, thank you. We'll hear from the other side. Mr. Schneider. Good afternoon, Your Honor, and thank you. I would like to take less than a minute to summarize why this case should not be remanded but should be affirmed. And the first issue is the undisputed facts, namely the settlement agreement, paragraph four, which explains how the parties agreed on a structure that would not violate either the settlement or the injunction. Now, the plaintiff sought to have this case reopened and asked the court to enforce the settlement, but now they're saying that you can't rely on the defense of paragraph four, which is totally inconsistent, and the plaintiff should not have it both ways. You're saying that this change structure was actually before the parties at the time of settlement? No, it was not before the parties. It was in the language that the parties agreed on at settlement that if the terminating ends are not partially within the opening, then there would be no infringement and no violation. Now, we didn't cross appeal because in the Datascope case, this court said it would be improper for the prevailing party to cross appeal, but you could rely on anything in the record to sustain the decision below. Here, the magistrate may express findings on paragraph four from plaintiff's expert witness, and these are paragraphs 60 to 62 of the magistrate's findings, where the expert for the plaintiff said, no, they are not partially within the opening. They are completely within the opening. That is an absolute defense. With all due respect to the district court, it was raised five times below, as pointed out in our red brief at page 26. Mr. Schneider, when it comes to the claim construction for the 125 patent, didn't the court below construe this particular limitation as so long as the terminating ends are located in the opening, that's how we should understand this limitation about partially terminating in the opening? Let me pull that up, but I don't recall that it was said that way, but allow me to just double check because I don't want to misspeak. The first upper side wall including a terminating end, and the first lower side wall including a terminating end, and what was said is, and I'm reading from appendix page 32, the upper half of the first side surface extending from the convex top to its terminal end located in the first opening. It doesn't say partial or complete or fully or anything like that. And this was after the party settlement, so the party did not challenge this claim construction, and it leaves the issue of partially or completely undefined, if you will. Mr. Schneider, I think I've absolutely lost the thread here. Why are we talking about this? I really don't get the point yet. We believe that the decision below should be affirmed on the basis of paragraph 4 of the settlement agreement, the magistrate's findings that were affirmed and adopted, and the testimony which comes solely from plaintiff's expert, that the accused product, the terminating ends are entirely rather than partially within the opening, and that was agreed by the parties would be an exemption from liability. So on that basis, this court should affirm the decision below independent of anything else. But again, that's not in the agreement, right? It is in the agreement, Your Honor. Were those the words that you read to us? Yes, if you would look, if I may, Your Honor, at Access Master's red brief at pages 5 and 6, which would be at pages 22 and 23 of the electronic version. The paragraph bridging the page says that the parties acknowledge that the defendants can redesign, and as long as, it says, by not including the first upper side wall, the one having ends terminate partially within the opening, and further that a redesigned product lacking this claim limitation shall not infringe the patents, plural, patents in suit or constitute a violation of the consent decree. So before this new version was designed, the parties agreed that if you did not have partial termination in the opening, you would not infringe. And in fact, all the witnesses agreed, and we're relying sufficiently to rely on plaintiffs on experts, that in the new product, those terminating ends are completely within the opening, not partially within the opening. And in fact, it was from a mechanical engineering standpoint, it was explained that in the old device, if you remove the channel, the so-called terminating ends or fins would still be there. In the new device, if you remove the channel completely, you take away those terminating ends, because they're in the channel walls rather than on what I would call the outside envelope walls. So on that basis alone, there should be affirmance. Now, I would like to address briefly the point about the 200 patents. I use the word plaintiff because the name of the product is a gate arm as well. In the plaintiff's grave reply brief at 10, they suggest that Dr. Tipton admitted with regard to the 200 patents that the new gate arm is the same. And there's a citation to Appendix 26 and Appendix 2369 and 2370. Appendix 26 does not use the word patent or the numeral 200. Appendix 2369 and 2370 does not use the word patent or the numeral 200. So I would submit that there is no such admission by defendant expert or anyone else. As far as what the red lines and the blue lines in the demonstratives indicate, the magistrate judge, after observing the demonstrative and after observing the witness's demeanor and explanation, wouldn't buy into the theory that the red lines are the 125 patents and the blue lines are the 200 patents. And no brief submitted by the plaintiff quotes any testimony that says the blue lines are the 200 patents. Dr. Rice at the cited pages only says on behalf of the plaintiff that the new design infringes both patents, which is an unsupported conclusion. So I would again submit there's no clear and convincing evidence of the not colorably different test and no clear and convincing evidence of all the other aspects of infringement. And on that part, the magistrate judge did say that the otherwise infringed feature the parties were disputing whether certain contentions could be relied on. Over the defendant access measures objections, the magistrate said I will let those contentions in, but only for the two terms of the claim that I construed. Well, plaintiff never brought anyone into court to talk about all the rest. They wanted to take depositions of plaintiff's customers to prove the other features. They never did. The judge gave them leave to do it. They never did. They did not depose or examine the principles of either of the two defendants on this topic. Nothing has been cited that goes by claim limitation and compares the new device to those claims. We believe that they just have failed on the clear and convincing evidence standard, and the decision below should be affirmed. And unless the court has specific questions, I would rely on our opposition brief for the remaining issues. Any more questions for counsel? No, just one, and that is if the decision below were to be affirmed here, would the plaintiff still be able to file a new patent infringement action against your new gate arm design based on infringing either or both of the patents here? It depends on what this court says in affirming the decision below. If the court affirms on the basis of the settlement agreement, that would be conclusive, and the answer is no. If the court here affirms without giving a specific reason or giving other reasons, such as the plaintiff did not meet its burden of proof of clear and convincing evidence, then the answer is they could, but they would be faced with the same defense, paragraph 4 of the settlement agreement. They would be faced with the testimony of their expert from the first case. They may have to change experts. I have no idea what their theory would be. But respectfully, it depends on the manner in which this court renders its decision. Any more questions? No. Thank you, Your Honor. Thank you, Your Honor. Will you rebuttal, Mr. Lockton? Thank you, Your Honor. Going to what my friend was just arguing, now, the infringement contentions were admitted for all purposes, and they were presented to the magistrate judge, and she didn't limit the admission of the infringement contentions to only two terms. But as identified on the appellee's red brief at 8, where they make that argument, if you look at the magistrate judge's report, she only analyzed whether or not there was a violation of the injunction based on two terms of one of the two patents. And so it was on those grounds, one of the main grounds, that we objected to the report and recommendation. The evidence was in the record. And what we have as far as where this concept of removing the channel, that just goes to one of our other arguments that we presented in our objections, that the principal defense in the underlying case before the magistrate was this idea of importing new claim terms of a U-shaped channel versus a C-shaped channel. But as we look at the actual geometric structure, there really isn't a difference, and there's definitely not a significant difference between the two. And we also have a number of extrajudicial admissions. We have findings of obviousness of this modification specifically that were never addressed by the district judge. And so under the 11th Circuit's law for review of a magistrate judge's opinion, we believe all of this needs to go back to the district judge to address the correct legal standard and the application of the record to that standard. I also heard my friend arguing about this partially versus completely within the opening language. I mean, frankly, that issue was presented below. It was rejected by the magistrate judge. It was presented to the district judge. It was rejected by the district judge. And now they're trying to rely upon it here for terms that they didn't ask for those terms to be construed. They didn't ask for the court below to do anything with regard to them. And they're asking for this court to affirm on what the district judge found to be a new ground in their objection or in their response to the objections. At the end of the day, what we have here is a modification to a physical structure that presents no significant change. It presents the same structural features performing the same function, arriving at the same result. It meets the, well, as I argued before, it meets the language of the 200 patent. And that specific modification has been found obvious and at least extrajudicially admitted to be the same between the two products. So, you know, going back to where I started, we believe that the constitutionally required de novo review had never been conducted. And so there's an incomplete record before this court on virtually every point, including my client's Daubert motion to exclude the entire testimony of Dr. Tipton. Well, counsel, what's your answer to their point that the settlement agreement paragraph 4 explicitly authorizes the change that was made? I would absolutely dispute that it authorized the change that was made. That's an argument that they presented and failed with below. Can you explain the reason you think it's wrong? Yes, Your Honor. The reason that we believe it's wrong is for the same reason that we presented during the evidentiary hearing and in our objections to the district judge, is that the language that was quoted within the settlement agreement is simply a representative statement of, if you don't have what we are calling currently the fins as holding in the LED light, then you won't infringe the patents. Now, my friend asked for that language to be construed, and it was. They prevailed on the claim construction, but now they're realizing that the construction that they asked for doesn't help them. This is Judge Chen. As I understand it, the limitation that was identified in the settlement agreement, that's a limitation that comes from the 125 patent, not the 200 patent. Is that right? That is correct, Judge Chen. And then the settlement agreement paragraph goes further and says, as long as you don't infringe this claim limitation, then you are not infringing the patents in suit, i.e., the 125 and the 200 patent. Is that right? I'm pulling up the language right now. I believe it says something to that effect. It refers to both patents, not just the one from which the quotation is taken. That is correct, yes. So, in a sense, they rise and fall together so long as they do not practice this specific claim limitation from the 125. Well, I guess I would argue, Your Honor, that right now we're here on a contempt proceeding. The contempt proceeding has its standard of the colorable difference and continues to infringe in the manner that the enjoined product infringed. Now, we've presented that case. If we were going to go forward in a new action, which, to answer the previous question, I believe that we have the right to go forward in a new action, but if we were to go forward, then that language and the proper construction of it would be at issue. I do believe that, as we presented in our case below... I'm just looking for a little help. Is there a different way to read that statement in the settlement agreement? I think the plain meaning is, if you don't practice this one limitation from the 125 patent, then you are not infringing either of the two patents. If there's a second reading of that statement, I'd be interested. Well, I think that the argument that is being presented by my friends on the other side is that that language necessarily imports a term of outer surface, which is a point that we discussed earlier, where we do not read that language of the claim of the settlement agreement. I think I'm asking a different question. It's more a basic conceptual question as to whether or not this settlement agreement the parties reached agreed that if you don't practice this one limitation from the 125 patent, then there is no infringement of the 125 patent or the 200 patent. I believe I understand your question, Judge Chen. To answer the question, the basic question that you're asking, yes, we would agree that the language reads in a manner that it says if you do not practice the claim limitation of the 125, you don't violate the settlement agreement. It would be for the reason that, as we presented below, that language from the 125 patent and 200 patent tracks the argument that we presented. All of which, I would go back to my initial point, needs to be addressed by the district judge. Any more questions for counsel? No. All right. In that case, the case is taken under submission with thanks to both counsel. Thank you. Thank you, Your Honors. That concludes this panel's arguments for today. The honorable court is adjourned until tomorrow morning at 10 a.m.